**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**EASTERN DIVISION**

JAMES MCGEE,                                                                    PLAINTIFF
REG. #29927-004

v.                                     2:14CV00124-BSM-JTK

UNITED STATES OF AMERICA                                           DEFENDANT

<u>**PROPOSED FINDINGS AND RECOMMENDATIONS**</u>

<u>**INSTRUCTIONS**</u>

The following recommended disposition has been sent to United States District Judge

Brian S. Miller.  Any party may serve and file written objections to this recommendation.

Objections should be specific and should include the factual or legal basis for the objection.

If the objection is to a factual finding, specifically identify that finding and the evidence that

supports your objection.  An original and one copy of your objections must be received in the

office of the United States District Court Clerk no later than fourteen (14) days from the date

of the findings and recommendations.  The copy will be furnished to the opposing party.

Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different,

or additional evidence, and to have a hearing for this purpose before the District Judge, you

must, at the same time that you file your written objections, include the following:

1.     Why the record made before the Magistrate Judge is inadequate.

2.     Why the evidence proffered at the hearing before the District Judge (if such a

1

hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.      The detail of any testimony desired to be introduced at the hearing before the

District Judge in the form of an offer of proof, and a copy, or the original, of any

documentary or other non-testimonial evidence desired to be introduced at the hearing before

the District Judge.

From this submission, the District Judge will determine the necessity for an additional

evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

## DISPOSITION

## I.      Introduction

Plaintiff James McGee is a federal inmate incarcerated at the Forrest City Medium

Federal Correctional Institution (FCI), who filed this pro se action pursuant to the Federal

Tort Claims Act (FTCA), based on the alleged inadequate medical care and treatment for a

foot injury (Doc. No. 1).  Plaintiff asks for damages from the Defendant.

Pending before the Court is the Defendant's Motion for Summary Judgment, Brief in

Support, and Statement of Facts (Doc. Nos. 14-16).  Plaintiff filed a Response to the Motion

(Doc. No. 20) and Defendant filed a Reply (Doc. No. 21).

## II.    Complaint

According to his Complaint (and Memorandum and Brief in Support), about January 26, 2011, Plaintiff sought medical attention for an injury he sustained to his right ankle/foot while in the yard at his Unit. (Doc. No. 2, p. 3) He was seen by medical personnel on February 3, 2011, and an x-ray was taken on March 1, 2011. (Id.)  Plaintiff submitted a sick call on March 17, 2011, asking for the results of the x-ray, and sought additional medical attention on June 6, 2011. (Id.) After continuous complaints of pain, Plaintiff saw another medical person on October 6, 2011, who noted chronic ankle pain but did not score Plaintiff's pain. (Id., p. 4) Plaintiff submitted a request for medical attention on December 5, 2011, and was told to attend sick call. (Id.) He saw Dr. Obi-Okoye on January 14, 2012, who noted a pain scale of 6-7 and that Plaintiff had a favored gait together with swelling and tenderness of his foot/ankle. (Id.) The doctor prescribed Ibuprofen, ordered a MRI, and noted that Plaintiff fell in February, 2011, and the x-ray results showed a negative injury. (Id.)  A second x-ray was taken and also was negative for fracture or abnormality.  (Id.)

During a follow-up visit with the doctor in March, 2012, the doctor noted the ankle was still swollen and tender and that the MRI had not been conducted.  (Id.)  He requested another MRI and referred Plaintiff to a podiatrist who recommended bunion surgery. (Id.) Plaintiff attended sick call on March 22, 2012, complaining of pain in his right foot. (Id.) The medical personnel noted the pain was a 7 on the scale but that Plaintiff walked with a normal gait.  (Id.) On April 13, 2012, Plaintiff again requested a MRI. (Id.) During a chronic care

visit on July 10, 2012, the medical personnel noted Plaintiff's normal gait. (Id., p. 5)  Plaintiff requested a MRI again on November 29, 2012, and attended sick call on January 10, 2013 for foot pain. (Id.)

After filing another sick call on March 1, 2013, Plaintiff was seen by medical personnel who noted ankle swelling. (Id.) He reported foot problems during a chronic care visit on April 3, 2013, and requested a refill of pain medication on May 13, 2013. (Id.) Medical personnel followed up on May 22, 2013, noting chronic ankle pain, swollen and tender with decreased range of motion, and a medical deformity. (Id.) Plaintiff again requested a MRI on May 23, 2013 and June 25, 2013, and underwent a MRI on July 8, 2013. (Id.) The results showed "questionable coalition of the talonavicular joint with cyst within the calcaneus, and abnormal signal in the sinus tarsi, which could represent 'sinus tarsi syndrome.'" (Id., quoting July 9, 2013 imaging report, pp. 85-86) This was noted by the Unit physician during a review of the MRI results on July 25, 2013. (Id., p. 6)

Plaintiff requested medical attention on August 6, 2013, and August 8, 2013, and attended sick call on September 9, 2013. (Id.) He was seen on September 13, 2013, by medical personnel and was issued a cane. (Id.) On October 31, 2013, Dr. Sokoloff noted "aggravated factors such as ankle motion, standing, walking, bending, and squatting, along with limited activity, a mild limp, mild crepitus, and limited uncomfortable range," and that Plaintiff's condition was beyond surgery "because of lack of treatment." (Id.) He recommended an orthopedic shoe, which was not issued to Plaintiff until September 11,

2014. (Id.)

Plaintiff claims medical staff delayed and disregarded his treatment and breached the applicable standard of care by misdiagnosing his injury, resulting in a worsening of the injury.

### III.    Summary Judgment

Pursuant to FED.R.CIV.P. 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997).  "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'"  Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted)).  "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'"  Id. at 1135.  Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit."  Id.

### A.    Defendant's Motion

5

An action for medical injury filed pursuant to the FTCA, 28 U.S.C. § 2671, <u>et</u> <u>seq.</u>, is prosecuted under the Arkansas Medical Malpractice Act, ARK. CODE ANN. § 16-114-201, <u>et</u> <u>seq</u>.  Defendant states that pursuant to the statute, Plaintiff must prove, by expert testimony, the degree of skill and learning ordinarily possessed by the medical care providers in the same or similar locality, a deviation of the standard of care, and that he sustained an injury that, without a deviation from the applicable standard of care, would not have otherwise occurred.  (<u>Id</u>., § 16-114-206(a)(1))

However, Defendant states, Plaintiff lacks medical expert testimony in this case, and therefore, cannot prove negligence as a matter of law, because the asserted negligence does not lie within the jury's comprehension as a matter of common knowledge, as set forth in the statute.   In addition, without such, Plaintiff cannot prove that "but for" defendant's negligence, his injury would not have occurred.

Defendant also states that Plaintiff's medical records do not support a finding of medical negligence.  When Plaintiff arrived at FCI in 2009, he suffered from peripheral neuropathy, diabetes mellitus type II, early skin lesions, obesity, chronic liver disease state II, dizziness, and giddiness.  (Doc. No. 16-1, p. 2)  Plaintiff attended sick call on February 3, 2011, complaining that he suffered ankle pain for three weeks, after he stepped in a hole on the recreation yard and injured his ankle.  (<u>Id</u>., pp. 9-10)[1]  He was seen on October 6,

---

[1] Although Plaintiff was seen by medical staff on June 9, 2011, June 28, 2011, May 9, 2012, and May 29, 2012, for other matters, he did not at those times complain about ankle or foot pain.  (<u>Id</u>., pp. 12-17, 33-37)

2011, for ankle pain, and reported that he did not know what happened, but that it just started hurting. (Id., pp. 20-22) Yet, on March 6, 2013, he reported to the medical staff that his ankle had been messed up since he rolled it in the recreation yard. (Id., pp. 38-39) His ankle was x-rayed on three occasions, which were all negative for fractures or dislocations. (Id., pp. 11, 28, 59) The MRI also was negative on these areas, and the radiologist noted possible "sinus tarsi syndrome." (Id., p. 41)

A podiatrist who evaluated Plaintiff recommended orthotics to support his flat feet, and surgery to repair bunions and calluses. (Id., pp. 31-32) An orthopedic physician who examined Plaintiff found no clinical or subjective evidence of "sinus tarsi syndrome," but noted symptomatic right ankle/hind foot pes planovalgus, or flat foot deformity. (Id, p. 49) This physician, Dr. Sokoloff, recommended arch supports, rigid ankle bracing, a Medrol Dose Pack and anti-inflammatory drugs. (Id.) He did not, however, recommend surgery. (Id.) Plaintiff received an ankle brace on January 2, 2015, but when he showed up at medical on February 13, 2015, he was not wearing it. (Id., pp. 50-57)

Defendants asked an orthopaedic surgeon, Dr. Jay Lipke of OrthoArkansas, to review Plaintiff's medical records and provide a medical opinion. He stated Plaintiff suffers from congenital right pes planovalgus, or flat foot deformity, which is difficult to treat and becomes symptomatic as the deformity increases in severity. (Doc. No. 16-2, p. 3) This gradual condition results in a lateral shifting of the heel bone, which in turn shifts weight bearing from the heel pad to the medial aspect of the ankle and hind foot. (Id.) According to

Lipke, non-operative treatment includes anti-inflammatory medications, arch supports and bracing, and surgical treatment is quite involved and would include cutting bones, fusing joints, and prolonged weight bearing ambulation. (Id.) He noted that Sokoloff found no evidence of "sinus tarsi syndrome," which is described as a nebulous condition possibly causing unexplained lateral hind foot pain in young athletes following lateral ankle sprains. (Id., p. 2)  Finally, Lipke found that Plaintiff's medical care met the standard of care and that any delay in treatment did not affect Plaintiff's condition.  (Id., p. 4) Based on the medical records and Dr. Lipke's conclusion, Defendant states Plaintiff cannot show that his treatment deviated from the standard or care or caused injury which would not otherwise have occurred.

### B.      Plaintiff's Response

Plaintiff claims Defendant was negligent for "failing to recognize that he had a serious medical need, and failing to provide proper nonsurgical treatment for that need," and instead, ignored his pain and suffering. (Doc. No. 20, p. 1) As a result of the delay in treatment, his condition deteriorated to a point where the only option left is a painful, invasive surgery.  He claims a medical expert is not required in this particular case, especially since he is incarcerated and unable to obtain an expert.  He also claims, "due to Defendant's failure to correct his pre-existing pes planovalgus or flat foot deformity...nonoperative treatments are ineffective or poorly tolerated...and the only other treatment option is surgical intervention." (Doc. No. 20, p. 3) He states that if Defendant had corrected his flat-footed problem in 2011,

he would not now have to resort to surgery, which is a material issue of fact disputed by the parties.

### C.    Defendant's Reply

Defendant notes that Plaintiff first sought medical treatment in February, 2011, for an injury he suffered to his ankle when he stepped in a hole on the recreation yard.  Yet, he now claims that Defendant negligently failed to treat a pre-existing flat-footed condition. Defendant notes that none of the three x-rays taken showed fractures or dislocation, and that Plaintiff was seen by both a podiatrist and an orthopedic physician.  Defendant also notes that Plaintiff was treated throughout the time with anti-inflammatory medications,shoe inserts, and arch supports.  Finally, Defendant states Plaintiff cannot support his negligence claim absent expert testimony that Defendant improperly and negligently delayed treatment which resulted in injury.

### D.    Analysis

In this FTCA action, this Court is bound to apply the law of the state in which the alleged acts occurred.  28 U.S.C. § 1346(b); Goodman v. United States, 2 F.3d 291, 292 (8th Cir. 1993).  As noted by Defendant, the Arkansas Medical Malpractice Act governs in this case, and requires that Plaintiff produce expert testimony to prove that Defendant deviated from the standard of care ordinarily possessed by the medical care providers in the same locality, causing Plaintiff to sustain an injury that would not otherwise have occurred.  ARK.

CODE ANN. § 16-114-206.[2]

Plaintiff does not dispute that he first complained about foot pain as a result of stepping in a hole on the recreation yard, and he does not dispute that he had a pre-existing flat-footed condition. Plaintiff also does not explain numerous gaps in his requests for treatment for his foot pain.  After the x-ray was taken on March 1, 2011, he did not seek medical attention again until June 9, 2011. (Doc. No. 16-1, p. 12) Another gap occurs between June 28, 2011, when he complained of cough and nasal congestion, until he submitted a sick call for foot pain on October 6, 2011. (Id., pp. 15-19) He was seen by the Unit physician on January 14, 2012, where a MRI was ordered and another x-ray was taken, and he was treated for pain. (Id., p. 23) Dr. Okoye saw him March 1, 2012, informed him of the x-ray results, and noted Plaintiff was ambulatory without support, bearing weight on the right ankle.  (Doc. No. 2, p. 30) He was referred to a podiatrist in March, 2012, who recommended bunion surgery and arch supports. (Doc. No. 16-1, pp. 31-32) Yet, another gap in seeking treatment for ankle pain occurred until Plaintiff submitted a MRI request on November 29, 2012. (Doc. No. 2, p. 55) On March 6, 2013, he requested a MRI, and told the nurse that his bunions were not causing his pain and he did not want bunion treatment (Id., pp. 38-39) He was treated for foot pain on numerous occasions in 2013, and by an orthopedic

---

[2]In Broussard v. St. Edward Mercy Health System, Inc., 2012 Ark. 14, 386 S.W.3d 385 (Ark. 2012), the court struck language in the statute which required that the expert testimony be provided by a medical care provider of the same specialty as the defendant. The remaining language of the statute was upheld.

physician on October 31, 2013. (Doc. No. 16-1, p. 44)   The orthopedic physician reviewed Plaintiff's records and the MRI report and concluded as follows: " No clinical or subjective evidence of sinus tarsi syndrome.  Medical sxs and difficulty from toe raising comes from hindfoot nd midfoot deformities. Arch support and rigid afo bracing recommended.  Medrol dose pack as needed. Nsaids prn."  (Doc. No. 16-1, p. 49) And finally, the declaration of Dr. Lipke indicates that Plaintiff's flatfoot deformity is difficult to treat and occurs gradually, rather than as "an acute injury per se."  (Doc. No. 16-2, p. 3) He also stated that nonoperative treatment of this condition includes anti-inflammatory medications, arch supports and bracing. (Id.) Plaintiff was prescribed Ibuprofen 800, and was also prescribed arch supports and shoe inserts.  (Doc. No. 16-1, p. 10, 21) Although the orthopedic physician recommended an ankle brace in October 13, 2013, the records show that he did not receive this until January 15, 2015. (Id., p. 55) Yet, Plaintiff does not provide any evidence that he complained about this to anyone, and he does not deny Defendant's report that he was not wearing his brace when he appeared at the medical unit in February, 2015.  (Id., p. 57)

Initially, the Court finds that there appears to be no excuse for the delay in Plaintiff receiving a MRI test.  The test was first ordered by Dr. Okoye in January, 2012, and again, in March, 2012, and yet Plaintiff did not receive the test until July, 2013.  Although the test proved negative, and there is no proof of any detrimental effect due to the delay, the Court is deeply disturbed by the delay.  In addition, there appears to have been an unexplained delay in Plaintiff receiving an ankle brace prescribed by the orthopedic physician in October,

2013.

Despite these delays, however, the Court finds that the applicable standard of care in this case is not a matter of common knowledge, and that an expert witness is necessary to establish that the acts of Defendant's employees deviated from the standard of care and caused Plaintiff an injury that otherwise would not have occurred. "In malpractice cases, a defendant is entitled to summary judgment when it is shown that the plaintiff has no qualified expert to testify as to the applicable standard of care." Dodd v. Sparks Regional Medical Center, 90 Ark.App. 191, 198, 204 S.W.3d 579, 584 (2005). Based on the medical evidence of the care provided to Plaintiff, and the lack of any evidence from the Plaintiff that Defendant's treatment was negligent and proximately caused him harm,[3] the Court finds that Defendant's Motion should be granted.

## IV.    Conclusion

IT IS, THEREFORE, RECOMMENDED that Defendant's Motion for Summary Judgment (Doc. No. 14) be GRANTED, and Plaintiff's Complaint against Defendant be DISMISSED with prejudice.

---

[3]Although Plaintiff claims in his complaint that Dr. Sokoloff concluded that his condition was beyond surgery "because of lack of treatment," the Court finds no such reference in Sokoloff's report. (Doc. No. 2, pp. 6, 109-114) In addition, Plaintiff provides no evidence that he has attempted to obtain an expert's opinion concerning Defendant's treatment.

IT IS SO RECOMMENDED this 3rd day of November, 2015.

_____

JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE